IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-649

Filed 5 August 2026

Wake County, No. 24CV016266-910

MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY, Plaintiff,

v.

HENSON NOVELTIES, INC. and NC 3116 HILLSBOROUGH, LLC, Defendants.

Appeal by Defendant Henson Novelties, Inc. from Order entered 22 November 2024 by Judge A. Graham Shirley, II, in Wake County Superior Court. Heard in the Court of Appeals 28 January 2026.

> *The Law Office of John T. Benjamin, Jr., P.A., by William T. Kesler, Jr. and William E. Hubbard, and Callahan & Blaine, P.C., by Edward Susolik, pro hac vice, for Defendant-Appellant.*

> *Maynard Nexsen PC, by James W. Bryan and Olivia F. Fajen, and Day Pitney LLP, by John W. Cerreta, pro hac vice, and Carolyn Rennie, pro hac vice, for Plaintiff-Appellee.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Henson Novelties, Inc.[1] (Defendant) appeals from an Order Granting Plaintiff Mesa Underwriters Specialty Insurance Company's Motion for Judgment on the Pleadings and Denying Defendant's Motion to Stay. The Record before us tends to

---

[1] After both named Defendants entered Notice of Appeal, Defendant NC 3116 Hillsborough, LLC settled with Plaintiff and did not participate in this appeal.

reflect the following:

Defendant operates the Smoke Rings chain of retail smoke shops in North Carolina, including a location at 3116 Hillsborough Street in Raleigh (Smoke Rings). Plaintiff, an insurance company, issued a commercial insurance policy (Policy) to Defendant for the operation of Smoke Rings, effective 2 November 2021 to 2 November 2022.

A section of the Policy titled "COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY" (Coverage A) stated:

> [Plaintiff] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [Plaintiff] will have the right and duty to defend the insured against any 'suit' seeking those damages. However, [Plaintiff] will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply.

Two relevant provisions of the Policy modified the scope of coverage. A provision titled "LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION" (Designated Premises Endorsement) stated:

> This insurance applies to 'bodily injury' and 'property damage' caused by an 'occurrence' that takes place in the 'coverage territory' only if:
>
> (1) The 'bodily injury' or 'property damage':
>
> > (a) Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or
> >
> > (b) Arises out of the project or operation shown in the

Schedule[.]

A separate provision titled "EXCLUSION – PRODUCTS-COMPLETED OPERATIONS HAZARD" (PCOH Exclusion) stated: "This insurance does not apply to 'bodily injury' or 'property damage' included within the 'products-completed operations hazard'. " In turn, the Policy specified the " 'Products-completed operations hazard' . . . [i]ncludes all 'bodily injury' . . . occurring away from premises you own or rent and arising out of 'your product[.]' " "Your product" was defined as "[a]ny goods or products . . . manufactured, sold, handled, distributed or disposed of by" the insured.

On 8 January 2024, a lawsuit was filed in Wake County against Defendant and several other parties (Underlying Lawsuit). The lawsuit arose from a car accident in Raleigh on the evening of 9 January 2022. The Underlying Complaint alleged two "obviously intoxicated" young men, Griffin Curtis and John Faulkenberry, purchased nitrous oxide cream chargers[2] from Smoke Rings and inhaled nitrous oxide from the cream chargers for the purpose of intoxication while sitting in Curtis's SUV in the Smoke Rings parking lot and while driving to and visiting other locations.[3] Around 8:00 p.m., while driving on Avent Ferry Road, Curtis "experienced intense

---

[2] The Underlying Complaint stated: "Nitrous oxide cream chargers are lawfully used with a cream dispenser to create whipped cream from whipping cream, powdered sugar, and vanilla" and "unlawfully used for purposes of intoxication . . . by inserting them into a cream dispenser/Cracker and inhaling the nitrous oxide gas."

[3] The Underlying Complaint also alleged a third person, Harrison Hosse, stayed in the SUV while Curtis and Faulkenberry bought the cream chargers in Smoke Rings, inhaled nitrous oxide with them, and remained with them until the car accident.

intoxication from the nitrous oxide" and "drove his vehicle into the opposite lanes of travel . . . and accelerated to 62 miles per hour." Curtis's SUV collided head-on with another car, killing its two passengers, Kayla Kushner and Morgan Kushner, and severely injuring its driver, Brennan Callen. The accident occurred "less than three miles from" Smoke Rings.

In the Underlying Complaint, Callen and the estates of Kayla and Morgan Kushner (Underlying Plaintiffs) asserted negligence and gross negligence claims against Defendant. In pertinent part, the Underlying Complaint alleged Defendant negligently sold cream chargers to Curtis and Faulkenberry because the Smoke Rings employee had reasonable knowledge they were likely to inhale nitrous oxide from the cream chargers for the purpose of intoxication, become intoxicated, drive a motor vehicle, and pose a danger to the public.

On 31 January 2024, Defendant tendered the Underlying Lawsuit to Plaintiff, seeking defense and indemnification under the Policy. On 14 March 2024, Plaintiff "denied it had any obligation under the . . . Policy to defend or indemnify [Defendant] for the claims asserted in the Underlying Lawsuit" but stated it would fund Defendant's legal defense subject to a reservation of rights.

In May 2024, Plaintiff filed a Complaint for a Declaratory Judgment. Plaintiff sought declarations it had no obligation to defend or indemnify Defendant on the bases of the Designated Premises Endorsement and the PCOH Exclusion.

In October 2024, Plaintiff filed a Motion for Judgment on the Pleadings. In a

brief supporting this Motion, Plaintiff argued the Underlying Lawsuit was not covered under the Designated Premises Endorsement because the alleged bodily injuries "occurred away from a designated premises and did not arise from a designated operation." Plaintiff also invoked the PCOH Exclusion, which it claimed "exclude[d] coverage for 'bodily injury' occurring away from [Defendant's] premises and arising out of its 'product[.]' " Plaintiff contended the PCOH Exclusion barred coverage because the Underlying Complaint alleged the car accident happened several miles from Smoke Rings and the victims' injuries occurred "as a result of [Defendant's] negligent and grossly negligent conduct in selling nitrous oxide which caused or contributed to Curtis' intoxication." In sum, because the "Designated Premises Endorsement and PCOH Exclusion independently and when read together clearly establish that the Policy does not provide coverage for the claims asserted in the Underlying [Lawsuit][,]" Plaintiff argued it had no duty to defend or indemnify Defendant.

Defendant opposed Plaintiff's Motion for Judgment on the Pleadings and filed a Motion to Stay Plaintiff's declaratory judgment action. Defendant argued "the allegations in the Underlying Lawsuit create a potential for coverage" under the Designated Premises Endorsement, reasoning:

> In order for there to be coverage under the Designated Premises Endorsement, either (1) the bodily injury occurred at the designated premises, or (2) the bodily injury arose out of the designated premises. The allegations in the Underlying Lawsuit satisfy the first prong, because the alleged bodily injury took place

on [Defendant's] premises. Specifically, the unexpected and unintended bodily injury to Griffin A. Curtis, John R. Faulkenberry, and Harrison W. Hosse occurred while in the parking lot of [Smoke Rings].

In the alternative, Defendant claimed the allegations in the Underlying Lawsuit also satisfied the second prong of the Designated Premises Endorsement, because the "bodily injury" to Curtis, Faulkenberry, and Hosse "arose out of [Defendant's] operations" in "selling a legal product at its store." Defendant further argued the PCOH Exclusion did not bar coverage because the bodily injuries, i.e., the inhalation of nitrous oxide by the three men in the SUV, "took place on [Defendant's] premises" in the Smoke Rings parking lot. Contending "there are unresolved issues of material fact that must first be determined in the Underlying Lawsuit before a dispositive adjudication can be made[,]" Defendant requested the trial court "deny [Plaintiff's] Motion and grant [its] Motion to Stay . . . this action pending resolution of the Underlying Lawsuit."

After a hearing on 6 November 2024, the trial court entered an Order Granting Plaintiff's Motion for Judgment on the Pleadings and Denying Defendant's Motion to Stay on 22 November 2024.[4] In relevant part, the trial court concluded the "claims asserted in the Underlying Lawsuit do not fall within the coverage provided by the . . . Policy by operation of the Designated Premises Endorsement and the [PCOH]

---

[4] Defendant only challenges the portion of the Order granting judgment on the pleadings to Plaintiff on its duties to defend and indemnify. Defendant does not challenge the denial of its Motion to Stay in the same Order.

Exclusion." Therefore, Plaintiff was "not obligated to defend or indemnify [Defendant] . . . against the Underlying Lawsuit[.]" Defendant timely provided written Notice of Appeal on 19 December 2024.

## Issue

The dispositive issue on appeal is whether the trial court erred by concluding Plaintiff has no duty to defend or indemnify Defendant by operation of the Designated Premises Endorsement and/or the PCOH Exclusion.

## Analysis

Defendant argues the trial court erred by ruling Plaintiff has no duty to defend or indemnify it against the claims in the Underlying Lawsuit due to the Designated Premises Endorsement and the PCOH Exclusion.

Where, as here, "the language of the insurance policy and the contents of the complaint are undisputed, appellate courts review de novo the question whether an insurer has an obligation to defend its insured against those allegations." *N.C. Farm Bureau Ins. Co., Inc. v. Hague*, 283 N.C. App. 215, 218-19, 872 S.E.2d 394, 396 (2022) (citation, quotation marks, and brackets omitted). *See also DiCesare v. Charlotte-Mecklenburg Hosp. Auth.*, 376 N.C. 63, 70, 852 S.E.2d 146, 151-52 (2020) (orders granting or denying motions for judgment on the pleadings are reviewed de novo).

Our Supreme Court has explained the differences between an insurance company's duties to defend and indemnify as follows:

> Generally speaking, the insurer's duty to defend the insured is

broader than its obligation to pay damages incurred by events covered by a particular policy. An insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings; its duty to pay is measured by the facts ultimately determined at trial. When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable. Conversely, when the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend.

*Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986) (citations and footnote omitted). In other words, an insurer has no duty to defend "if the facts [alleged in the pleadings] are not even arguably covered by the policy[.]" *Id.* at 692, 340 S.E.2d at 378 (citations omitted). Additionally, "[i]n addressing the duty to defend, the question is not whether some interpretation of the facts as alleged could possibly bring the injury within the coverage provided by the insurance policy; the question is, assuming the facts as alleged to be true, whether the insurance policy covers that injury." *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364 N.C. 1, 7, 692 S.E.2d 605, 611 (2010). To determine whether an insurer has a duty to defend, "we apply the 'comparison test,' reading the polic[y] and the complaint side-by-side to determine whether the events as alleged are covered or excluded." *Id.* at 6, 692 S.E.2d at 610 (citation, quotation marks, and ellipsis omitted).

Reading the relevant language of the Policy, Coverage A provides: "[Plaintiff] will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' . . . to which this insurance does not apply." The PCOH Exclusion states: "This

insurance does not apply to 'bodily injury' . . . included within the 'products-completed operations hazard'." In turn, the " 'Products-completed operations hazard' . . . [i]ncludes all 'bodily injury' . . . occurring away from premises you own or rent and arising out of 'your product[.]' " The definition of "[y]our product" includes "[a]ny goods or products . . . sold . . . by" the insured.[5]

This Court analyzed a similar insurance policy exclusion in *Deason v. J. King Harrison Co., Inc.*, 127 N.C. App. 514, 491 S.E.2d 666 (1997). There, the insured, a transportation company, negligently loaded bales of fiber onto a truck on its premises in Charlotte. *Id.* at 516-17, 491 S.E.2d at 667. The truck was then driven to Missouri, where the plaintiff was injured after he opened the rear door and a bale fell on him. *Id.* at 516, 491 S.E.2d at 667. The question on appeal was whether the policy's " 'completed operations hazard exclusion' " barred "coverage for injuries sustained off premises, but resulting from negligence occurring on the insured's premises." *Id.* at 517, 491 S.E.2d at 668. We held the exclusion barred coverage because the plaintiff's injury occurred: (1) off premises in Missouri, not on the insured's premises in Charlotte; and (2) after the insured had loaded the bales on the truck, which

---

[5] The language in the PCOH Exclusion is unambiguous; therefore, we "must enforce the contract as the parties have made it, and may not, under the guise of interpreting an ambiguous provision, remake the contract and impose liability upon the [insurance] company which it did not assume and for which the policyholder did not pay." *Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970) (citations omitted). *See also Harleysville Mut.*, 364 N.C. at 9-10, 692 S.E.2d at 612 (ambiguous language in an exclusionary provision of a policy is strictly construed against the insurer, but if the language is unambiguous, meaning not fairly and reasonably susceptible to multiple constructions, courts must enforce the contract as written).

"completed" its "operations" on its premises. *Id.* We further observed "the fact that the bales may have been loaded negligently" on the insured's premises was "not material to a determination of whether the loading was a 'completed operation.' " *Id.* (footnote omitted). *See also Lindley Chem. Inc. v. Hartford Accident & Indem. Co.*, 71 N.C. App. 400, 403-04, 322 S.E.2d 185, 187-88 (1984) (where the plaintiff was injured by the insured's cleaning product at the plaintiff's own workplace, policy provision barring coverage for injuries occurring away from the insured premises applied, even though the insured's employee, while on its premises, may have negligently concealed a warning sign on the product that ultimately caused the plaintiff's injury).

Comparing the PCOH Exclusion side-by-side with the facts alleged in the Underlying Complaint, *see Harleysville Mut.*, 364 N.C. at 6, 692 S.E.2d at 610, the Underlying Plaintiffs seek damages for "bodily injur[ies]"—the deaths and severe injuries resulting from the car accident. These bodily injuries "occurr[ed]" at the site of the accident on Avent Ferry Road, several miles "away from [Defendant's] premises"—the Smoke Rings shop on Hillsborough Street. Finally, the bodily injuries "ar[ose] out" of "product[s] . . . sold by" Defendant—the nitrous oxide cream chargers. Assuming, as we must, the truth of the facts alleged in the Underlying Complaint, *see id.* at 7, 692 S.E.2d at 611, a straightforward application of the comparison test establishes the "events as alleged are . . . excluded" from coverage by operation of the PCOH Exclusion, *id.* at 6, 692 S.E.2d at 610. Thus, as with the exclusion in *Deason*, the PCOH Exclusion bars coverage—and therefore relieves Plaintiff of its duty to

defend—because the bodily injuries[6] alleged in the Underlying Complaint arose from the use of Defendant's products and occurred away from Defendant's premises.[7] *See Deason*, 127 N.C. App. at 517-18, 491 S.E.2d at 668.

In its appellate brief, Defendant also argues it "disputes the facts alleged in the [Underlying] Complaint and requested that the trial court allow discovery to proceed to develop evidence to support coverage." Defendant continues, "Despite this [request], the trial court erroneously found the duty to defend is ordinarily measured by the facts as alleged in the pleading." But under the comparison test, courts *do* evaluate whether the insurer has a duty to defend by reviewing the pleading and

---

[6] In the proceeding below and on appeal, Defendant has insisted the "bodily injur[ies]" alleged in the Underlying Complaint include injuries supposedly suffered by Curtis, Faulkenberry, and Hosse from inhaling nitrous oxide in the Smoke Rings parking lot. This proposition supports Defendant's claim the Underlying Complaint alleges facts potentially triggering coverage and Plaintiff's duty to defend on the ground Curtis, Faulkenberry, and Hosse were injured on the insured premises. This argument is meritless on the facts and the law. First, the Underlying Plaintiffs plainly seek damages from Defendant for the deaths of two people and severe injuries of another suffered in an accident several miles from Smoke Rings. Defendant is not being sued by or on behalf of Curtis, Faulkenberry, or Hosse to recover for their supposed injuries. In fact, those three individuals are co-defendants in the Underlying Lawsuit.

On the law, the comparison test directs us to compare the Policy language to the facts alleged in the Underlying Complaint, including the injuries for which the Underlying Plaintiffs seek relief. *See Harleysville Mut.*, 364 N.C. at 7, 692 S.E.2d at 611 ("[T]he question [of whether there is a duty to defend] is, assuming the facts as alleged to be true, whether the insurance policy covers that injury[.]"). Ancillary factual allegations stated in the Underlying Complaint—such as the allegation Curtis, Faulkenberry, and Hosse inhaled nitrous oxide in the Smoke Rings parking lot, which Defendant hypothesizes caused "bodily injury" potentially triggering coverage—are not germane to this inquiry. *Cf. N.C. Farm Bureau Mut. Ins. Co. v. Cox*, 263 N.C. App. 424, 442, 823 S.E.2d 613, 626 (2019) ("[O]ur Supreme Court has clarified that the reviewing court is not to consider *hypothetical* facts in [the duty to defend] analysis, only those facts actually alleged in the pleadings." (emphasis in original) (citing *Harleysville Mut.*, 364 N.C. at 7, 692 S.E.2d at 611)).

[7] Because we conclude the PCOH Exclusion independently bars coverage and eliminates Plaintiff's duties to defend and indemnify, we need not consider whether the Designated Premises Endorsement covers the allegations in the Underlying Complaint.

assuming the truth of all factual allegations therein. *See Harleysville Mut.*, 364 N.C. at 6-7, 692 S.E.2d at 610-11. Here, as we have explained, the application of the comparison test establishes that the PCOH Exclusion bars coverage and relieves Plaintiff of its duty to defend. Thus, Defendant's argument rooted in disputing the facts in the Underlying Complaint has no merit.

Moreover, "[a]n insurer's duty to indemnify is narrower than its duty to defend." *Hague*, 283 N.C. App. at 221-22, 872 S.E.2d at 398 (citations omitted); *Waste Mgmt.*, 315 N.C. at 691, 340 S.E.2d at 377 ("[T]he insurer's duty to defend the insured is broader than its obligation to pay damages incurred by events covered by a particular policy."). "[I]t follows that if an insurer has no duty to defend, it has no duty to indemnify." *Hague*, 283 N.C. App. at 222, 872 S.E.2d at 398. Therefore, the trial court correctly ruled Plaintiff has no duty to defend or indemnify Defendant. *See id.* Consequently, the trial court did not err in entering its Order.

## **Conclusion**

Accordingly, for the foregoing reasons, we affirm the Order.

AFFIRMED.

Judges GORE and GRIFFIN concur.